GORDAN et al. v. JACKSON.

SAME v. FAVOR.

(Circuit Court, E. D. Arkansas, W. D. February 13, 1896.)

EQUITY—JURISDICTION—ADEQUATE REMEDY AT LAW—SUIT TO REMOVE CLOUD ON TITLE.

A suit in equity, to remove a cloud upon complainant's title to land and exclude defendant from such land, cannot be maintained, in a federal court, when the defendant is in possession of the land and the complainant is not, the remedy at law being adequate and complete; and a local statute, permitting the bringing of such suits in the state courts, does not enlarge the power of the federal courts to entertain the same.

P. C. Dooley, for plaintiffs.

Williams & Bradshaw, for defendants.

WILLIAMS, District Judge. On the 7th day of July, 1891, James G. Gordan and others filed two bills in equity,—one against W. F. Jackson, and the other against J. C. Favor. Although the bills and the cases made upon them present some points of difference, they are so far similar that, in my opinion, they must be controlled by the same principle. They allege that the plaintiffs are the owners in fee of certain lands, described, and set out the manner in which they were acquired; that defendants claim some estate or interest therein adverse to plaintiffs, the exact nature of which is unknown; that such claim is invalid, but is, nevertheless, a cloud on complainants' title; that the suit is brought to determine what interest or estate the defendants have; that defendants have made improvements on the land, and received rents and profits therefrom, which receipts exceed the cost of improvements; and that said claims should be set off. The prayer is that "the title to the land be determined and fully quieted between the parties," that plaintiffs' title be confirmed, and for general relief. On the 2d day of November, A. D. 1891, the defendants filed demurrers to the bills for the reasons, in substance, (1) that it appeared by the bill that complainants were not, but that defendants were, in possession of the lands; (2) that the bill sought to remove a cloud from title, and did not disclose what the cloud was; (3) that the cause of action alleged in the bill was in effect an action of ejectment, and could not be maintained in equity. On the 4th day of January, 1892, the complainants filed amended bills, alleging, in substance, the facts set out in the original bills, and specially praying that each of the defendants "be required to disclose fully any and all title, claims, liens, or incumbrances he may have to said property, and all rents and profits received by him in any form from said land, and that a decree be entered fully settling and determining the question of title and ownership between the parties, and awarding the property to the plaintiffs, and that defendants be excluded from the property and enjoined from asserting any claim or title, that the proper orders be made to carry the decree into effect, and for general relief. On the 5th day of June, 1893, the defendants filed their answers in the several suits, asserting title in themselves,

and denying the title of complainants. Their claims of title are based upon divers conveyances, set up in their respective answers, and upon adverse possession for a time sufficient to create title under some statutes of limitations of the state of Arkansas that are specially pleaded. The demurrer to the original bill had not been acted on at that time; and defendants, in their answers, repeat the facts set up as grounds of demurrer, and ask that the suits be dismissed. The causes proceeded to a hearing upon the pleadings and proofs, including depositions, and the defendants have filed elaborate briefs in which they renew the grounds taken by demurrer.

When the questions thus presented are defined and understood, and the authorities bearing upon them are examined, I am forced to the conclusion that the suits cannot be maintained. The objection is not without force that the bills do not disclose any deed to the defendants that constituted a cloud on complainants' title, but only charge that defendants asserted a claim, as to the character of which complainants are ignorant, and ask that they be required to disclose their claim, and that it be held invalid. The case of Rich v. Braxton, 158 U. S. 406, 15 Sup. Ct. 1006, may be read with interest upon this point, but I have not deemed it necessary to reach a conclusion upon it.

The other objection, that the defendants and not the complainants are in possession of the lands, and that complainants have a plain, adequate, and complete remedy at law, precludes the maintaining of these suits.

Article 7 of the constitution of the United States provides:

"In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise re-examined in any court of the United States than according to the rules of the common law."

The act of congress of September 24, 1789, provides:

"Suits in equity shall not be sustained in either of the courts of the United States in any case where a plain, adequate and complete remedy may be had at law."

These suits are, in effect, an effort, on part of an alleged owner out of possession, to recover from a party in possession lands alleged to be improperly withheld. That such a right was, at the time of the adoption of the constitution and statute cited above, cognizable at law, is a proposition that cannot be controverted; and it is equally well settled that, under the rules of chancery practice then in force, a suit to cancel a deed as a cloud upon title could not be maintained by one kept out of possession. Pom. Eq. Jur. §§ 253, 1394, 1396; Wehrman v. Conklin, 155 U. S. 322, 15 Sup. Ct. 129; Holland v. Challen, 110 U. S. 15, 3 Sup. Ct. 495. If, then, the complainants are permitted to maintain this suit, the defendants will be denied the right to a trial by jury guarantied by the constitution, and the statute, which forbids a suit in equity where a plain, adequate and complete remedy may be had at law, will be disregarded. The fact that this case would have been cognizable at law when the constitution was

adopted brings it within the guaranty of a right to trial by jury. And the fact that a court of law could award the possession of the land, with damages for its detention, and forever put at rest any claim of title the defendants could then make, brings the case clearly within the inhibition of the statute. If this suit can be maintained, a defendant's right to a trial by jury is absolutely dependent on the will of the plaintiff, while the inhibition of the statute will close the doors of chancery to no one who elects to enter them.

But it may be insisted that this suit was maintainable under the provisions of the statutes of Arkansas, which provided that a suit might be brought by one out of possession against one in possession, to determine the estate or title of the occupant, and quiet the title of the plaintiff. Sand. & H. Dig. § 6120. This change in chancery practice was enacted in March, 1891. It was repealed by the next session of the general assembly of the state, in so far as it permitted this character of suit to be maintained where the lands were held adversely to the plaintiff. Its early repeal indicates that the new practice was not found to be an improvement on the old, and may be taken as a warning to courts sitting in chancery that they should not, of their own motion, extend their jurisdiction in this class of cases. When these suits were brought, that act was in force in the state of Arkansas, and regulated the practice in its courts. There were decisions of the federal courts, made with regard to similar statutes, that might well have been construed by the eminent and learned counsel who brought these suits as giving force to the state statute in chancery practice in the federal courts. Later decisions, however, are directly to the effect that this cannot be the case, and show that the former decisions, properly construed, never intended to permit such practice. The extent to which the state statute can be given effect in the federal courts is easily understood in the light of these later opinions.

Where lands were wild and unoccupied, it had been held that the federal courts, in chancery, sitting in states that had adopted such statutes, could entertain suits to quiet title in the rightful owner. Holland v. Challen, 110 U. S. 15, 3 Sup. Ct. 495. But, in such cases, a court of law can afford the owner no remedy, and therefore there is no right to a trial by jury, since such right existed only in cases at law. It is, therefore, no violation of the constitution or statute to bring such suits in equity. But where lands are unlawfully occupied, the owner can sue the occupant at law, and the consequent right of trial by jury exists. Hence, the difference from the case where no one is in possession or sued at law. In Whitehead v. Shattuck, 138 U. S. 146, 11 Sup. Ct. 276, the effect of a similar Iowa statute upon the practice of the federal courts of that state was well considered and clearly reasoned in an opinion by Justice Field. It is well to note that he had written the opinion of the court in Holland v. Challen, 110 U. S. 15, 3 Sup. Ct. 495, which is sometimes thought to warrant suits like this. But he clearly indicates the distinction between the case where no one is in possession, and a court of law can afford no remedy, and that where the defendant is

in possession, and the plaintiff may sue him at law, and obtain adequate and complete relief. He says:

"It [the Iowa statute] thus enlarges the powers of a court of equity, as exercised in the state courts; but the law of the state cannot control the proceedings in the federal courts, so as to do away with the force of the law of congress declaring that 'suits in equity shall not be sustained in either of the courts of the United States, in any case where a plain, adequate and complete remedy may be had at law,' or the constitutional right of parties in an action at law to a trial by a jury." 138 U. S. 152, 11 Sup. Ct. 276.

In the case of Wehrman v. Conklin, 155 U. S. 314, 15 Sup. Ct. 129, the question was again considered by the supreme court of the United States. The cases were carefully and clearly reviewed in an opinion by Justice Brown, and the effect of them was stated to be that they "denied the power of the federal courts to afford relief under such statutes, where the complainant was not in possession of the lands." 155 U. S. 325, 15 Sup. Ct. 129. The same ruling has been made, for the same reasons, in regard to statutes that have been passed in various states, authorizing the institution of suits by simple contract creditors to set aside fraudulent conveyances by their debtors. Scott v. Neely, 140 U. S. 106, 11 Sup. Ct. 712; Cates v. Allen, 149 U. S. 451, 13 Sup. Ct. 883, 977; Hollins v. Iron Co., 150 U. S. 371, 14 Sup. Ct. 127. It was pressed upon that court, with regard to both classes of statutes, that suits under them had been maintained; and, as to each, the reply of the court was that it was a defense that might be waived, and was waived if not made before decree, and that in the cases referred to it had been so waived. 150 U. S. 380, 14 Sup. Ct. 127.

The questions presented by the pleadings and evidence in this case have regard largely to the dates when defendants entered upon and occupied the lands in dispute, the extent and character of their possession, and their claim of title as arising therefrom. These are questions that are appropriately triable at law, and the defendants have a right, under the constitution and statutes of the United States, to demand that they shall be thus tried. They presented their demand in apt time, and have in no manner waived it. It follows that the causes must be dismissed, without prejudice, however, to the rights of complainants to assert, in actions at law, any title they may have to the lands.